Terry EDE and United States Fidelity and Guaranty Co., a Maryland corporation, Plaintiffs,

v.

MUELLER PUMP CO., a Delaware corporation, Valley Industries, Inc., a New Jersey corporation, and Valley Steel Products Company, a Missouri corporation, Defendants.

Civ. A. No. 85–K–636.

United States District Court, D. Colorado.

Feb. 3, 1987.

John Gehlhausen, Lamar, Richard Glasman, Glasman, Jaynes & Carpenter, Denver, for plaintiffs.

Steven P. Hemmerle, Barrows & Sisun, P.C., Denver, for Mueller Pump Co.

Bruce A. Menk, Hall & Evans, Denver, for Valley defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

### Introduction

Ede brings this diversity-based product liability action for injuries received on July 30, 1983 while using an Aeromotor windmill. The complaint alleges claims under theories of negligence and strict liability. The case is before me on two separate motions for summary judgment, one filed by Mueller Pump and one by Valley Industries.

### Factual Background

Ede purchased his Aeromotor brand windmill in 1950. The windmill was manufactured by Aeromotor Company of Chicago, Illinois. In 1958, Aeromotor Company was sold to Motor Products Corporation. By 1965, Motor Products manufactured Aeromotor windmills through a subsidiary company named Braden Industries.

In 1976, the rights to use the Aeromotor name and sell Aeromotor windmills in the United States were purchased by Valley Steel, a wholly-owned subsidiary of Valley Industries. Valley Steel commenced manufacture of Aeromotor windmills on the basis of the same design which had been used by the previous Aeromotor windmill manufacturers. Benson Deposition, at 52.

In 1984, Mueller Pump, guaranteed by its parent corporation Mueller Company, purchased the assets, machinery, and inventories of Valley Pump Group, a division of Valley Steel, from Valley Industries. Benson Deposition, at 26–7; Ayson Affidavit, at ¶ 8. Valley Pump Group manufactured the Aeromotor windmills for Valley Steel. Under the terms of the Mueller purchase, Valley Pump employees were transferred to Mueller. Benson Deposition, at 53. Valley Pump Group was absorbed by Mueller Pump Company. *Id.*, at 58. Mueller Pump has manufactured and sold Aeromotor windmills since December 1984. Ayson Affidavit at ¶ 6.

Valley Steel, meanwhile, retained its other divisions and so remained in business following Valley Pump's sale to Mueller Company. Benson Deposition, at 59. However, Valley Steel no longer manufactured Aeromotor windmills after the 1984 sale, since "Mueller purchased the assets of Valley Steel Products Company connected with the manufacture of the Aeromotor windmill." Mueller Pump's Reply Brief, at 2.

All these companies used the trade name "Aeromotor" when manufacturing the windmills. Benson Deposition, at 50. At each point in the history of the transfers of the Aeromotor brand name, the manufacturing processes then extant were also transferred. Benson Deposition, at 53.

### Standards for Decision

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining the existence of any genuine issue of material fact, the record is construed in the light most favorable to the party opposing the motion. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980). However, the adverse party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

### Mueller Pump's Motion for Summary Judgment

Mueller proffers several arguments in favor of its motion for summary judgment. Mueller first claims no affirmative or omissive conduct on its part could have proximately caused plaintiff's injuries. In support of this claim, Mueller argues it was not even in existence at the time of the manufacture and sale of the windmill in question. Moreover, Mueller did not begin to manufacture Aeromotor windmills until seventeen months after the date of the accident.

▇ As far as plaintiff's strict liability claim is concerned, this argument merely begs the question of successor liability. Corporations which meet the doctrinal test of successorship step into the shoes of their predecessors. The successor doctrine assumes no prior existence on the part of the successor. Otherwise, there would be no need for the doctrine at all. Thus the fact that Mueller was not in existence at the time the accident occurred, or at the earlier time Ede's windmill was manufactured, is of no concern here. That issue is inherently allayed by the successor doctrine.

▇ However, Mueller's proximate causation argument is also apparently addressed to plaintiff's negligence claim. Mueller did not begin to manufacture Aeromotor until 1984. Ede bought his windmill in 1950 and was injured in 1983. Therefore, Mueller does not owe plaintiff any duty with regard to the windmill. Although duty is not a required element of a claim brought under a theory of strict liability, duty is of course a prerequisite for negligence. Therefore, on this basis, plaintiff's negligence claim could be dismissed as to Mueller. However, resolution of this issue presents fact questions which are not ripe for determination at this point. Accordingly, Mueller's motion will be denied in its entirety.

Mueller also claims it may not be held liable as Valley Steel's successor. The general rule is one of nonliability for successor corporations. Traditionally, there were four exceptions to this principle. *Ruiz v. Excello Corporation*, 653 P.2d 415 (Colo. App.1982). I adopted a fifth exception, called the product line exception, in *Hickman v. Thomas C. Thompson Company*, 592 F.Supp. 1282, 1284–5 (D.Colo.1984). Under this exception:

> [W]here one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes the same manufacturer's operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

*Hickman*, at 1284, quoting *Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332, 431 A.2d 811, 825 (1981).

I applied *Hickman* most recently in *Gibson v. Armstrong World Industries, Inc.*, 648 F.Supp. 1538 (1986). In *Gibson*, I disagreed with Chief Judge Finesilver's analysis in *Florum v. Elliott Manufacturing Company*, 629 F.Supp. 1145, 1149 (D.Colo. 1986), and indicated I would continue to adhere to use of the product line exception. I remain of the same opinion.

▇ Before I can apply *Hickman*, however, I must first decide whether Colorado law applies.[1] A federal court sitting

---

1. As an alternative holding in *Gibson*, I also invoked the product line exception through application of Pennsylvania law. I found Pennsylvania law could govern that case by my application of Colorado's *contract* choice of law rule analysis. *See Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 601 P.2d 1369 (1979). I based this alternative mode of rationale on Judge Doyle's opinion in *Kloberdanz v. Joy Manufacturing Co.*, 288 F.Supp. 817, 819–20 (D.Colo.1968).

Upon further consideration of this issue, I have concluded the proper choice of law rule to apply in issues of successor liability is the tort choice of law rule rather than the contract choice of law rule. Thus, in deciding which state's law of successor liability to apply, *Rostek* should be used in place of *Wood Bros Homes*. I therefore decline to follow that portion of *Kloberdanz* which adopts a contract choice of law rule. I also limit my alternative holding in

in diversity applies the choice of law rules of its forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Colorado choice of law provisions, the law of the state with the most significant contacts to the underlying tort must be applied. *First National Bank in Fort Collins v. Rostek,* 182 Colo. 437, 514 P.2d 314 (1973). Here, all the contacts point to· application of Colorado law. Plaintiff is from Colorado, the injury occurred in Colorado, and the windmill in question was purchased in Colorado. Therefore, I must determine whether Mueller falls within the product line exception, as adopted in *Hickman.*

■ As noted above, Mueller has frankly admitted it "purchased the assets of Valley Steel Products Company connected with the manufacture of the Aeromotor windmill." Mueller's Reply Brief, at 2. In *Gibson,* I held that purchase of all or substantially all of the manufacturing assets of a division which manufactured the product line in question would satisfy the test. *Gibson,* at 1541–1542. Therefore, Mueller may be held liable as Valley Pump Group's successor. The fact that Valley Steel and Valley Industries remained in business and retained most or all or their assets for manufacturing products other than Aeromotor windmills is irrelevant.

Moreover, in determining whether Mueller purchased all or substantially all of the assets of the Valley Pump Group, the Aeromotor windmill manufacturing division of Valley Steel, I may look to the contract of sale between Mueller Company and Valley Industries.[2] The contract of sale demonstrates a transfer of property nearly identical to the transfer made in *Gibson.* Mueller's Reply Brief, Exhibit A, at pages 2–4. Inventories, raw goods, machinery and equipment, manufacturing and office supplies, real property, patents, trademarks, bonds, licenses, and exhaustive rights of

the Aeromotor windmill business were all conveyed. As the Benson deposition demonstrates, Valley Pump became Mueller Pump Company. Benson Deposition at 58.

Mueller may be held liable to plaintiff as a successor corporation to Valley Steel, assuming plaintiff ultimately prevails on the merits of his tort claims. *Gibson,* at 1543. Consequently, Mueller's other moving grounds are immaterial, and the motion for summary judgment must be denied.

### *Valley Industries' Motion for Summary Judgment*

■ Valley Industries' motion hinges on Colo.Rev.Stat. § 13–21–403(3). That statute provides:

Ten years after a product is first sold for use or consumption, it shall be rebuttably presumed that the product was not defective and that the manufacturer or seller thereof was not negligent and that all warnings and instructions were proper and adequate.

By its terms, this statute only raises a presumption in favor of the manufacturer. It is not conclusive on the issue of liability. A manufacturer is not automatically absolved of liability if the product in question is ten years old or older. Rather, plaintiff may rebut the presumption.

Here, plaintiff has not rested on the general allegations of his pleadings in response to Valley Industries' motion. Instead, plaintiff has filed the affidavits of L.W. (Pete) Knapp in response to Valley Industries' invocation of the statutory presumption. For the limited purposes of this summary judgment motion, I find the averments made in those affidavits sufficient to rebut the statutory presumption and to raise a genuine issue of fact as to the defectiveness of Ede's windmill. I make no comment as to whether the presumption

---

*Gibson* to its facts, since in that case the result was the same under either analysis.

**2.** Although, in accordance with footnote 2, *supra,* I will not utilize the contract choice of law analysis in deciding which state's law of successorship should apply, I may resort to the con-

tract of sale between the defendant corporations to resolve the issue of successor liability itself once application of the tort choice of law rule has led me to the proper source of governing law.

will apply at trial. Accordingly, Valley Industries' motion for summary judgment must be denied.

IT IS THEREFORE ORDERED that Mueller Pump's motion for summary judgment is denied. It is further ordered that Valley Industries motion for summary judgment is also denied.